IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ADAM JAMES GEORGE,

        Defendant.

3:16-cr-00388-BR
(3:18-cv-00005-BR)

OPINION AND ORDER

BILLY J. WILLIAMS
United States Attorney
GEOFFREY A. BARROW
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204
(503) 727-1014

        Attorneys for Plaintiff

BEAR WILNER-NUGENT
620 S.W. Fifth Avenue
Suite 1008
Portland, OR 97204
(503) 351-2327

        Attorney for Defendant

**BROWN, Senior Judge.**

This matter comes before the Court on Defendant Adam James George's Motion (#67) to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. For the reasons that follow, the Court **DENIES** Defendant's Motion and **DECLINES** to issue a certificate of appealability.

## BACKGROUND

On September 1, 2016, Magistrate Judge Stacie Beckerman issued a Criminal Complaint against Defendant Adam James George for Possession with Intent to Distribute MDMA/Ecstasy and psylocibin mushrooms in violation 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

On September 1, 2016, Defendant made an initial appearance before Magistrate Judge Beckerman, who appointed Assistant Federal Public Defender (AFPD) Fidel Cassino-DuCloux to represent Defendant. On September 2, 2016, Defendant waived his right to a preliminary hearing, and Magistrate Judge Beckerman released Defendant on conditions.

On September 2, 2016, Assistant United States Attorney (AUSA) Pat Ehlers "made a Pre-Indictment offer for a joint recommendation of 33 months. [Defendant] rejected that offer." Decl. of Fiedl Cassino-DuCloux at ¶ 3A.

On September 20, 2016, Defendant was charged in an

Indictment with one count of Possession with Intent to Distribute MDMA in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

On October 25, 2016, AUSA Ehlers and AFPD Cassino-DuCloux had a telephone conversation. AFPD Cassino-DuCloux's contemporaneous notes reflect the following: "[T]he Govt. will offer [Defendant] a misdemeanor drug conviction . . . if he accepts the offer by Monday [October 31, 2016]." Def.'s Mem., Ex. 112 at 3. Specifically, Ehlers "offered [Defendant] the opportunity to plead guilty to a misdemeanor in exchange for a probationary sentence recommendation of 12 months." Cassino-DuCloux Decl. at ¶ 3B.

AFPD Cassino-DuCloux's contemporaneous notes indicate on October 28, 2016, counsel reviewed the government's offer with Defendant. After reviewing the discovery Defendant had received at that point, Defendant "decided . . . there was nothing in the discovery that could tie his Bitcoin accounts to any alleged illicit activity." Cassino-DuCloux Decl. at ¶ 3B. Accordingly, "[o]n [Defendant's] request" AFPD Cassino-DuCloux contacted AUSA Ehlers and "counter offered w/3 [months] of probation." Def.'s Mem., Ex. 112 at 3. AUSA Ehlers declined Defendant's counter offer. Defendant advised AFPD Cassino-DuCloux that he wanted to go to trial.

On November 1, 2016, investigators met with Defendant's former roommate, Edward Dula. Presentence Report (PSR) ¶ 22.

Dula advised investigators that he had lived with Defendant at 4912 N. Montana Ave, Portland, Oregon 97217-3641, for approximately eight months from spring 2013 through early 2014. Dula stated he became aware at some point that Defendant was involved with MDMA and Dula decided to move out. Dula told the investigators that he had observed a "large vacuum-sealed bag in the house containing what defendant stated was MDMA" and "at a later date, he observed that defendant had encapsulated a quantity of the MDMA powder inside multiple gel caps." *Id.* In addition, "[a]ccording to case agents, analysis from a search of defendant's emails revealed defendant had engaged in MDMA distribution as early as November of 2015." *Id.*

AFPD Cassino-DuCloux's contemporaneous notes indicate on November 2, 2016, AUSA Ehlers informed AFPD Cassino-DuCloux that he had talked to Dula and that Dula was going to testify "he saw [Defendant] rcv [received] packages in the past full of [a] crushed ice type of substance." Def.'s Mem., Ex. 112 at 3.

On November 11, 2016, Defendant filed a Motion (#22) to Suppress Evidence related to the warrant application permitting the search of Defendant's residence and electronic devices. Specifically, Defendant asserted the government made material misrepresentations concerning Defendant's use of the internet to order illicit substances from the Netherlands and omitted "critical punctuation in [a] text exchange."

On November 17, 2016, AUSA Ehlers made a verbal offer of a plea that "would cap the Government at 33 months and leave the Defense free to ask for a probationary sentence." Cassino-DuCloux Decl. at ¶ 3C. AFPD Cassino-DuCloux met with Defendant to discuss the offer, at which time Defendant explained "he could not testify because he admitted to us that he sent the box of MDMA." Def.'s Mem., Ex. 112 at 4. AFPD Cassino-DuCloux's contemporaneous notes reflect Defendant "started telling us he did not know what he could tell us now and began taking the 5th when we asked him questions." *Id.* Defendant, however, rejected the 33-month offer.

On November 21, 2016, the Court held a hearing on Defendant's Motion to Suppress and denied Defendant's Motion.

On November 22, 2016, AFPD Cassino-DuCloux received discovery from the government of the computer forensic imaging of Defendant's computers. AFPD Cassino-DuCloux testifies in his Declaration that the computer forensic imaging contained information that "suggested [Defendant's] Bitcoin account had previously been terminated for suspected dark web participation." Cassino-DuCloux Decl. at ¶ 2B. Defendant also "discovered that his ex-roommate, Michael Matheas, had been interviewed by the FBI and appointed counsel as a material witness." *Id.* AFPD Cassino-DuCloux states the defense "knew . . . Matheas could testify that [Defendant] sold him MDMA in the past," Dula had already advised

Defendant's investigator and AFPD Cassino-DuCloux that he had seen Defendant "receive a pink substance in the mail which he thought was MDMA, and Dula "had seen [Defendant] sell MDMA when they were roommates." *Id*. AFPD Cassino-DuCloux states Defendant believed Dula "seemed credible and had helped the police in the sting operation against [Defendant]," and, therefore, Defendant "felt [Dula's] testimony would hurt the defense." AFPD Cassino-DuCloux notes as a result of this evidence and information and "[g]iven the strength of the government's evidence and [Defendant's] sentencing exposure it was [Defendant] who suggested entering a guilty plea," and AFPD Cassino-DuCloux concurred. Cassino-DuCloux Decl. at ¶ 2D.

On November 23, 2016, Defendant agreed to a proffer with the government. During the proffer Defendant explained how he got involved in the business of distributing MDMA and how he made his profits. Defendant admitted he had violated the computer-use prohibition in his pretrial-release conditions when he accessed a dark web site in October 2016 via a computer that was not monitored by Pretrial Services. Def.'s Mem., Ex. 3 at 5. Defendant stated he accessed the dark web site to secure and to strengthen his passwords. Defendant admitted he also alerted the vendor of the last shipment of MDMA that Defendant received about "law enforcement involvement." *Id*. Finally, Defendant admitted he had accessed approximately $2,000 worth of Bitcoin after

Magistrate Judge Beckerman had ordered him not to use computers. *Id.* at 6.

On November 23, 2016, Defendant pled guilty to the one count of Possession with Intent to Distribute MDMA. At the change-of-plea hearing Defendant advised the Court that he had enough time with counsel "to consider all of [his] options," he had asked counsel all of the questions he had, and he had considered whether to go forward with trial. Nov. 23, 2016, Tr. at 9. Defendant asserted he had discussed with counsel the benefit of pleading guilty versus the potential risks in going to trial, and he believed pleading guilty was in his "own best interest." Tr. 10. The Court reviewed with Defendant the consequences of pleading guilty, and Defendant indicated he understood. The Court also reviewed the constitutional rights that Defendant was giving up by pleading guilty, and Defendant indicated he understood. The Court asked Defendant whether the following statement in his Plea Agreement was true and accurate:

> I have carefully reviewed every part of this
> agreement with my attorney. I understand and
> voluntarily agree to its terms. I expressly waive
> my rights as outlined in this agreement. I wish
> to plead guilty because in fact I am guilty.

Tr. at 17-18. Defendant indicated it was true and accurate. Defendant stated he had not been pressured by anyone to plead guilty, and it was his "personal and voluntary choice" to do so. Tr. 24.

On June 26, 2017, the Court held a sentencing hearing and sentenced Defendant to a 21-month term of imprisonment and three years of supervised release.

On June 30, 2017, the Court entered a Judgment. Defendant did not appeal his conviction.

On January 2, 2018, Defendant filed a Motion (#67) to Vacate or Correct Sentence on the ground of ineffective assistance of counsel.

On June 8, 2018, Defendant's Motion to Vacate was fully briefed, and the Court took it under advisement.

## STANDARDS

28 U.S.C. § 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> * * *
>
> If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall

discharge the prisoner or resentence him or grant
a new trial or correct the sentence as may appear
appropriate.

Although "the remedy [under § 2255] is . . . comprehensive,
it does not encompass all claimed errors in conviction and
sentencing. . . . Unless the claim alleges a lack of
jurisdiction or constitutional error, the scope of collateral
attack [under § 2255] has remained far more limited." *United
States v. Addonizio*, 442 U.S. 178, 185 (1979).


## DISCUSSION

As noted, Defendant moves to vacate his conviction and
sentence on the ground that he received ineffective assistance of
counsel. Defendant also requests an evidentiary hearing.

The government asserts Defendant's Motion should be denied
on the merits.

## I. Standards

The Supreme Court has established a two-part test to
determine whether a defendant has received constitutionally
deficient assistance of counsel. *Premo v. Moore*, 131 S. Ct. 733,
739 (2011). *See also Strickland v. Washington*, 466 U.S. 668,
678, 687 (1984). Under this test a defendant must not only prove
counsel's assistance was deficient, but also that the deficient
performance prejudiced the defense. *Premo*, 131 S. Ct. at 739.
*See also Sexton v. Cozner,* 679 F.3d 1150, 1159 (9th Cir. 2012);

*Ben-Sholom v. Ayers*, 674 F.3d 1095, 1100 (9th Cir. 2012).

"To prove deficiency of performance, the defendant must show counsel made errors so serious that performance fell below an objective standard of reasonableness under prevailing professional norms." *Mak v. Blodgett*, 970 F.2d 614, 618 (9th Cir. 1992)(citing *Strickland*, 466 U.S. at 687-88)). *See also Sexton*, 679 F.3d at 1159 (citing *Premo*, 131 S. Ct. at 739). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688. *See also Detrich v. Ryan*, 677 F.3d 958, 973 (9th Cir. 2012). There is a strong presumption that counsel's assistance was adequate. *Strickland,* 466 U.S. at 689. *See also Sexton*, 679 F.3d at 1159.

To prove prejudice "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. *See also Sexton*, 679 F.3d at 1159-60. "A reasonable probability is a standard of proof 'sufficient to undermine confidence in the outcome' and is 'somewhat lower' than a preponderance of the evidence." *United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015)(quoting *Strickland*, 466 U.S. at 695). "[T]o obtain relief on [a] claim [for ineffective assistance of counsel in a guilty plea], a petitioner must convince the court that a decision to reject the

plea bargain would have been rational under the circumstances.'" *Rodriguez-Vega*, 797 F.3d at 788 (citing *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). When "ineffective assistance leads a petitioner to accept a plea bargain, a different result means that but for counsel's errors, the petitioner would either have gone to trial or received a better plea bargain." *Rodriguez-Vega*, 797 F.3d at 788 (quotation omitted). *See also Hill v. Lockhart*, 474 U.S. 52, 59 (1985)(To establish prejudice with respect to a guilty plea, the defendant must show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland,* 466 U.S. at 697. *See also Heishman v. Ayers*, 621 F.3d 1030, 1036 (9th Cir. 2010). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland,* 466 U.S. at 697. *See also Heishman*, 621 F.3d at 1036.

## II.  **Analysis**

As noted, Defendant moves to correct his sentence on the ground of ineffective assistance of counsel. Specifically, Defendant alleges counsel rendered ineffective assistance when he:

1.  Advised Defendant to plead guilty,

2.  Missed the opportunity to secure the offer for a
    misdemeanor plea,

3.  Mishandled Defendant's attempt to cooperate with the
    government, and

4.  Failed to use all of the available helpful evidence at
    sentencing.

## A.  Guilty Plea

Defendant asserts AFPD Cassino-DuCloux provided
ineffective assistance when he advised Defendant to plead guilty.
Specifically, Defendant states in his Declaration that he "wanted
to take [his] criminal case to trial [and] . . . fully intended
to take [his] case to trial even after the court denied [his]
motion to suppress evidence on November 21, 2016." Decl. of Adam
James George at ¶ 2. Defendant states AFPD Cassino-DuCloux,
however, "consistently urged [him] to plead guilty." George
Decl. at ¶ 3. Defendant states he "decided to plead guilty only
because [counsel] advised [him] on November 23 that [his]
situation was hopeless at trial and that the sentencing
consequences of a trial loss were sure to be devastating." *Id.*
at ¶ 4.

Defendant's statements are not fully supported by the
record. For example, the record reflects Defendant considered
pleading guilty as early as October 28, 2016, if AUSA Ehlers

would agree to a sentence of probation only. In addition, the record reflects Defendant's understanding of the case and of the government's evidence changed after Defendant filed the Motion to Suppress. Specifically, the record reflects on November 17, 2016, AFPD Cassino-DuCloux met with Defendant to discuss the government's verbal offer of a plea that "would cap the Government at 33 months and leave the Defense free to ask for a probationary sentence offer." Cassino-DuCloux Decl. at ¶ 3C. At that time Defendant explained "he could not testify because he admitted to us that he sent the box of MDMA." Def.'s Mem., Ex. 112 at 4. AFPD Cassino-DuCloux's contemporaneous notes state Defendant "started telling us he did not know what he could tell us now and began taking the 5th when we asked him questions." *Id.* Similarly on November 22, 2016, AFPD Cassino-DuCloux received discovery from the government of the computer forensic imaging of Defendant's computers, which contained information that "suggested [Defendant's] Bitcoin account had previously been terminated for suspected dark web participation." Cassino-DuCloux Decl. at ¶ 2B. Defendant also "discovered . . . his ex-roommate, Michael Matheas, had been interviewed by the FBI and appointed counsel as a material witness." *Id.* AFPD Cassino-DuCloux states the defense "knew . . . Matheas could testify that [Defendant] sold him MDMA in the past," Dula had already advised Defendant's investigator and AFPD Cassino-DuCloux that he had

13- OPINION AND ORDER

seen Defendant "receive a pink substance in the mail which he thought was MDMA, and Dula "had seen [Defendant] sell MDMA when they were roommates." *Id*. AFPD Cassino-DuCloux states Defendant believed Dula "seemed credible and had helped the police in the sting operation against [Defendant]," and, therefore, Defendant "felt [Dula's] testimony would hurt the defense." AFPD Cassino-DuCloux notes as a result of this evidence and information and "[g]iven the strength of the government's evidence and [Defendant's] sentencing exposure it was [Defendant] who suggested entering a guilty plea" and AFPD Cassino-DuCloux concurred. Cassino-DuCloux Decl. at ¶ 2D. Further, Defendant was aware that most of this evidence would be admitted at trial because the Court denied his Motion to Suppress.

Finally, at the change-of-plea hearing Defendant assured the Court that he had enough time with counsel "to consider all of [his] options," he had asked counsel all of the questions he had, and he had considered whether to go forward with trial. Nov. 23, 2016, Tr. at 9. Defendant stated he had discussed with counsel the benefit of pleading guilty versus the potential risks in going to trial, and he believed pleading guilty was in his "own best interest." Tr. 10. The Court asked Defendant whether the following statement in his Plea Agreement was true and accurate:

> I have carefully reviewed every part of this agreement with my attorney. I understand and

> voluntarily agree to its terms. I expressly
> waive my rights as outlined in this
> agreement. I wish to plead guilty because in
> fact I am guilty.

Tr. at 17-18. Defendant indicated it was true and accurate.

Defendant stated he had not been pressured by anyone to plead

guilty, and it was his "personal and voluntary choice" to do so.

Tr. 24.

On this record the Court concludes trial counsel did

not provide ineffective assistance with respect to Defendant's

guilty plea.

### B. Opportunity to Secure the Offer for a Misdemeanor Plea

Defendant asserts AFPD Cassino-DuCloux provided

ineffective assistance when he failed to secure the offer for a

misdemeanor plea. Specifically, Defendant asserts if AFPD

Cassino-DuCloux "had effectively managed his relationship with

AUSA Patrick Ehlers . . . defendant would have been able to

receive a tremendously better misdemeanor plea offer." Def.'s

Mem. at 4. In his Declaration Defendant states he "would have

accepted [the October 28, 2016] misdemeanor offer if

Mr. Cassino-DuCloux had been able to get it in writing and signed

by AUSA Ehlers, which he never did." George Decl. at ¶ 8.

AFPD Cassino-DuCloux's contemporaneous notes, however,

indicate Defendant requested AFPD Cassino-DuCloux to contact AUSA

Ehlers and counter offer with three months of probation only.

When AUSA Ehler declined the offer, Defendant advised AFPD

15- OPINION AND ORDER

Cassino-DuCloux that he wanted to go to trial. Def.'s Mem.,
Ex. 112 at 3. AFPD Cassino-DuCloux testifies in his Declaration
that he reviewed AUSA Ehler's misdemeanor plea offer and the
discovery available to Defendant at that time and Defendant
"decided there was nothing in the discovery that could tie his
Bitcoin accounts to an alleged illicit activity," and, therefore,
he requested AFPD Cassino-DuCloux counter offer with probation
only. When AUSA Ehler's declined the counter offer, Defendant
"was insistent on trial." Cassino-DuCloux Decl. at ¶ 3B.

In addition, the government notes plea offers are routinely
negotiated verbally over the telephone or in person without first
reducing the terms to writing. The government asserts it would
have reduced the October 28, 2016, misdemeanor offer to writing
if Defendant had expressed interest in or accepted the offer as
made. As the Supreme Court noted in *Padilla,* "the proper measure
of attorney performance remains simply reasonableness under
prevailing professional norms" because "constitutional deficiency
. . . is necessarily linked to the practice and expectations of
the legal community." 559 U.S. at 366. Defendant has not
established AFPD Cassino-DuCloux's failure to obtain AUSA Ehler's
October 28, 2016, misdemeanor plea offer in writing and signed by
AUSA Ehlers before Defendant agreed to the terms of that plea
offer fell below an objective standard of reasonableness.

On this record the Court concludes trial counsel did

not provide ineffective assistance when he failed to secure a misdemeanor plea for Defendant.

## C.    **Attempt to Cooperate with the Government**

Defendant asserts AFPD Cassino-DuCloux provided ineffective assistance when he mishandled Defendant's attempt to cooperate with the government, which "cost[] Defendant a downward departure for substantial assistance."  Defendant notes he proffered immediately after his change of plea hearing on November 23, 2016.  During his proffer Defendant engaged in over an hour of detailed debriefing with the prosecutor and multiple law-enforcement agents and voluntarily produced cash withdrawn from Bitcoin, which constituted the remaining proceeds of his illegal activity, after he had used some of it to pay his rent. Defendant also accompanied members of his defense team to obtain more physical evidence that the government desired to recover from his home including various USB drives that Defendant used to store passwords and information and had buried in the back yard at his house.  Defendant asserts despite all of these efforts he did not "see tangible benefits" from his cooperation in the form of a downward departure for substantial assistance.

The record, however, reflects Defendant was released on September 2, 2016, pending trial and that the conditions of his pretrial release included a provision that prohibited him from using or possessing a computer or electronic media and from

accessing the Internet as well as public or private computer networks without prior approval of Pretrial Services. AFPD Cassino-DuCloux reviewed the pretrial-release conditions with Defendant, and Defendant signed them. On September 26, 2016, the Court amended Defendant's pretrial release conditions to permit him to access the Internet through a computer with monitoring software and to access a computer for case-specific purposes while in the presence of AFPD Cassino-DuCloux. Nevertheless, Defendant admitted during his proffer that he violated these pretrial-release conditions by using a home computer that was not monitored by Pretrial Services to secure his dark web passwords, to access drug proceeds, and to alert a co-conspirator that he had been caught in a controlled drug delivery. In addition, the information that Defendant provided did not implicate any other individuals in criminal activity. As a result of these factors, the government refused to move for a substantial-assistance departure.

It is unclear how AFPD Cassino-DuCloux could have anticipated or stopped Defendant from violating the clear and unambiguous conditions of his pretrial release relating to Internet and computer usage. Defendant read and signed the pretrial release provisions and does not indicate he did not understand them. The government's decision not to request a substantial-assistance departure was predicated on Defendant's

clear violation of his conditions and on his failure to implicate others in his proffer.

On this record the Court concludes trial counsel did not provide ineffective assistance when Defendant failed to receive a downward departure for substantial assistance.

### D. **Sentencing**

Defendant contends AFPD Cassino-DuCloux provided ineffective assistance at sentencing when he failed to present sufficient evidence of Defendant's post-offense rehabilitation and/or to adequately advise Defendant to engage in community service work.

The record reflects AFPD Cassino-DuCloux presented significant mitigation evidence at sentencing. For example, he noted Defendant had suffered from undiagnosed bipolar disorder at the time of the crime and that he was being treated for that condition with perfect attendance at treatment. AFPD Cassino-DuCloux also provided reports from Defendant's mental-health specialist that he was "stay[ing] engaged." Sentencing Tr. at 9. AFPD Cassino-DuCloux noted Defendant did not have any criminal history and submitted a letter by Defendant's father. AFPD Cassino-DuCloux testifies in his Declaration that the defense team "interviewed [Defendant's] family, friends, and employers[;] . . . collected his mental health records to the degree [Defendant] would allow . . . [;] dredged the internet for

articles about him and his bicycle business[;] consulted articles and professional studies on MDMA and Psilocybin mushrooms[;] . . . [and] brought one of his handmade bamboo bicycles into the court as a demonstrative exhibit." Cassino-DuCloux Decl. at ¶ 5A. At sentencing the Court noted

> Mr. Cassino-DuCloux has done a very good job to complete the record with respect to the many facets of [Defendant's] life, his interest in community service, his ability to be helpful to other people.
>
> * * *
>
> It's clear [Defendant] is a very skilled person. He has many talents. He's very intelligent. He has the capacity to use that intelligence in a variety of ways, building a bamboo bike and being able to sell it. And to help support himself that way.
>
> * * *
>
> The -- the mental health issues are also significant. [Defendant], like many people, took it upon himself, perhaps because he is so bright, to decide he knows better than the professionals, and he -- he was going to take on his own experimental therapy with controlled substances without a doctor's prescription.

Sentencing Tr. at 14-15. The Court also noted AFPD Cassino-DuCloux "argued in every way he can [that] a sentence of probation is sufficient." Sentencing Tr. at 16. The Court, however, was not persuaded:

> The criminal conduct is just too serious. And the message that would be sent by a probationary sentence for dealing at least a kilo of MDMA, via sophisticated means, via the Dark Web and so forth, that message is not one I can endorse. The

> criminal behavior is serious to the degree that a
> prison sentence is warranted for punishment, for
> deterrence, for community protection, and
> deterrence in the larger sense, too.

Sentencing Tr. at 16. Even if Defendant had done community

service, which AFPD Cassino-DuCloux states in his Declaration

that he "implored" Defendant to do, the Court would have reached

the same conclusion as to the seriousness of the criminal conduct

and the message that would have been sent by permitting a

probationary sentence.

On this record the Court concludes AFPD Cassino-DuCloux

did not provide ineffective assistance at sentencing.

In summary, the Court denies Defendant's Motion to Vacate,

Set Aside or Correct Sentence pursuant to § 2255.

## III. Evidentiary Hearing

Defendant requests an evidentiary hearing to support his

Motion to Vacate or Correct Sentence.

An evidentiary hearing "is not automatically required on

every section 2255 petition." *Baumann v. United States*, 692 F.2d

565, 570-71 (9th Cir. 1982). *See also United States v. Reyes-

Bosque*, 624 F. App'x 529, 530 (9th Cir. 2015)(same). A hearing

is not required when "the files and records conclusively show

that the movant is not entitled to relief," *United States v.

Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998), or when the

"record is sufficiently developed for the court to conclude that

their claim lack[s] merit." *Joseph v. United States*, 583 F. App'x 830, 831 (9th Cir. 2014).

The Court finds the files and records in this matter conclusively establish Defendant is not entitled to relief and the record is sufficiently developed for the Court to conclude that Defendant's claims lack merit. Accordingly, the Court denies Defendant's request for an evidentiary hearing.

## CONCLUSION

For these reasons, the Court **DENIES** Defendant's request for an evidentiary hearing and Defendant's Motion (#67) to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. The Court also finds Defendant has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court **DECLINES** to issue a certificate of appealability.

IT IS SO ORDERED.

DATED this 2nd day of August, 2018.

_____
ANNA J. BROWN
United States Senior District Judge